IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

Filed/Docketed
Apr 28, 2022

| | |
|---|---|
| IN RE:<br><br>MICHEAL CLEVELAND RUDICK,<br><br>Debtor. | Case No. 20-11918-M<br>Chapter 7 |
| SCOTT P. KIRTLEY, TRUSTEE,<br><br>Plaintiff,<br><br>v.<br><br>MABREY BANK,<br><br>Defendant. | Adversary No. 21-01012-M |

## MEMORANDUM OPINION

Bankruptcy trustees are given certain strong-arm powers under the Bankruptcy Code to collect non-exempt property of a debtor's estate for distribution to unsecured creditors. Those powers are limited by creditors' encumbrances properly placed on the property and perfected under state law prior to the bankruptcy filing. The issue before the Court is whether an entity other than the debtor may authorize the creation of a lien on the debtor's property that will defeat the trustee in a priority battle over estate property. The following findings of fact and conclusions of law are made pursuant to Federal Rule of Bankruptcy Procedure 7052.

**Jurisdiction**

This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334(b), and venue is proper pursuant to 28 U.S.C. § 1409.[1]  Reference to the Court of this matter is proper pursuant to 28 U.S.C. § 157(a).  The determination of the extent and nature of the estate's interest in property and the validity, extent, or priority of liens are core proceedings as defined by 28 U.S.C. § 157(b)(2)(A, K).

**Findings of Fact**

Micheal [sic] Cleveland Rudick ("Rudick") filed a voluntary petition for relief under Chapter 7 of Title 11 of the United States Code on December 30, 2020 (the "Petition Date").  Scott P. Kirtley ("Trustee") was appointed Trustee of his case.  Cornerstone Concrete and Excavation, LLC ("Cornerstone") is an Oklahoma limited liability company owned by Rudick organized under the laws of the State of Oklahoma in 2009 and, as such, was a separate legal entity from Rudick.

From at least August 2018 until and including the Petition Date, Rudick was the record and registered owner of the following items of personal property:

a. 2003 Ford F350 Crew Cab Lariat 4WD Dually (the "F350");

b. 2003 GMC Yukon Denali (the "Denali");

c. 2000 Teamwake860 Boat (the "Teamwake");

d. 1999 Mercury 115 Motor (the "Mercury");

e. 2003 Case Tractor (the "Tractor");

f. Boat Trailer (the "Trailer"); and

g. 2017 Model Trailer, aka 18' Tandem Axle Boat Trailer (the "2017 Trailer");

---

[1] Unless otherwise noted, all statutory references are to sections of the United States Bankruptcy Code, 11 U.S.C. § 101 et seq.

2

(collectively, the "Property"). On the Petition Date, Rudick scheduled his ownership interest in each piece of Property.[2]

Prior to August 13, 2018, Rudick had a banking relationship with Mabrey Bank ("Bank"),[3] which held at least three loans to Rudick, in his individual capacity, secured by various pieces of the Property. On August 13, 2018, Cornerstone delivered a Note and Security Agreement (the "Cornerstone Loan") to Bank, purporting to grant Bank a security interest in the Property. The Note and Security Agreement were executed by Rudick as President of Cornerstone, and all proceeds of the Cornerstone Loan went into Cornerstone's business account. At the same time, Rudick, in his individual capacity, executed a Guaranty of the Cornerstone Loan to Bank. Bank filed liens against the Property.[4] Cornerstone proceeded to make payments to Bank on the Cornerstone Loan. Rudick understood these relationships, entered into them with intention, and was in no way unclear about which entity was borrowing funds, pledging collateral, or responsible for the repayment of the Cornerstone Loan.

To the extent the "Conclusions of Law" contain any misplaced findings of fact, those findings are incorporated herein by this reference.

---

[2] Trustee's Exhibit 4.
[3] Mabrey Bank was formerly known as The Morris State Bank. The Court will follow the lead of the parties and refer to the bank by its current name, Mabrey Bank.
[4] This fact was admitted in the joint Pre-Trial Order submitted by the parties. *Docket No. 15*, at 3 ¶ 17. No evidence of the filing of such liens, or other evidence of perfection of the Bank's liens were offered. Trustee offered Certificates of Title for the Denali, the F350, and the Teamwake, indicating liens held by Bank, each of which were issued prior to the Cornerstone Loan. Additionally, a Certificate of Registration for the Mercury dated May 12, 2020, indicates a lien held by Bank. No other evidence was presented regarding the release of said liens, or whether new liens were recorded on the titles after the execution of the Cornerstone Loan documents.

## Conclusions of Law

The issue before the Court is whether Bank held an enforceable lien that had attached to the Property as of the Petition Date, such that it can defeat any rights to the Property acquired by Trustee under §§ 544 and 548 as a result of the Rudick bankruptcy filing.[5] Trustee appears to stake his case on the issue of ownership of the Property: he argues that Cornerstone could not have given Bank a security interest in the Property because it had no ownership rights in the Property. Bank does not appear to dispute Trustee's assertion that Rudick was the owner of the Property at all relevant times, including on the Petition Date, such that it became property of Rudick's bankruptcy estate. Instead, Bank challenges Trustee's premise that ownership of the Property is dispositive—or even relevant—to the issue of whether Cornerstone could grant an enforceable security interest to Bank.

Attachment of a security agreement in the Property is governed by § 1–9–203 of Oklahoma's Commercial Code, which adopts § 9–203 of the Uniform Commercial Code ("UCC").[6] "Title to goods is of little relative consequence under the Uniform Commercial Code."[7] In order for a security interest in property to be enforceable, it must have attached to the collateral.[8] A security interest attaches to collateral when (1) the debtor (here Cornerstone) has signed a security agreement describing the collateral; (2) value has been given; and (3) "the debtor has rights in the collateral or the power to transfer rights in the collateral to a secured party."[9] Here,

---

[5] Trustee also made an eleventh-hour attempt in his closing argument at the trial to challenge the perfection of Bank's liens on the Property. As discussed *infra*, the Court finds Trustee waived any issue regarding perfection of Bank's liens by failing to timely raise the issue.
[6] *See* Okla. Stat. tit. 12A, § 1-9-203.
[7] *Morton Booth Co. v. Tiara Furniture, Inc.*, 564 P.2d 210, 212 (Okla. 1977).
[8] *See* Okla. Stat. tit. 12A, § 1-9-203; *Kinetics Tech. Int'l Corp. v. Fourth Nat. Bank of Tulsa*, 705 F.2d 396, 398 (10th Cir. 1983).
[9] Okla. Stat. tit. 12A, § 1-9-203(b). *See also Kinetics Tech.*, 705 F.2d at 398; *Morton Booth Co.*, 564 P.2d at 213.

there is no doubt that Rudick signed the Security Agreement as a representative of Cornerstone, such that Cornerstone was the debtor and grantor of the security interest. It is also conceded that Bank gave value, in the form of loaned funds, to Cornerstone in exchange for the grant of the security interest, satisfying the second prong of the test. All that remains is to determine whether Cornerstone had "rights in the collateral" or "the power to transfer rights" in the Property to Bank when it executed the Cornerstone Loan.

The burden of proving that an item of property is subject to a security interest is on the party asserting the interest.[10] While the term "rights in collateral" is not defined in the UCC, the vast majority of courts have found that consent of the true owner of property is sufficient to give a debtor rights in collateral to grant a security interest in that property.[11] Such consent need not be explicitly stated; it may be inferred by the circumstances surrounding the granting of the security

---

[10] *In re Gamma Ctr., Inc.*, 489 B.R. 688, 693 (Bankr. N.D. Ohio 2013).

[11] *Kinetics Tech.*, 705 F.2d at 398; *In re Whatley*, 874 F.2d 997, 1004 (5th Cir. 1989) ("Although one cannot generally encumber another's property, several exceptions have long been recognized. Consent by the property owner constitutes one such exception."); *In re Atchison*, 832 F.2d 1236, 1239 (11th Cir. 1987) ("Indeed, all of the courts that have considered the question have ruled that an owner's permission to use goods as collateral creates rights in the debtor sufficient to give rise to an enforceable security interest."); *In re Pubs, Inc. of Champaign*, 618 F.2d 432, 436 (7th Cir. 1980) ("the debtor may clearly have sufficient 'rights' for purposes of § 9-203 if the true owner of the collateral has agreed to the debtor's use of the collateral as security or if the true owner has become estopped to deny the creation or existence of the security interest."); *In re WL Homes, LLC*, 452 B.R. 138, 146 (Bankr. D. Del. 2011) ("The established case law is clear that a debtor may grant a security interest in collateral that the debtor does not actually own if the owner of such collateral consents to such an arrangement."), *aff'd*, 476 B.R. 830 (D. Del. 2012), *aff'd in part*, 534 F. App'x 165 (3d Cir. 2013); *In re Terrabon, Inc.*, No. 12-36805, 2013 WL 6157980 at *5 (Bankr. S.D. Tex. Nov. 22, 2013) (collecting cases). *But see In re Clinkingbeard*, No. 19-11605, 2020 WL 1517932, at *1 (Bankr. D. Kan. Mar. 30, 2020) (corporation did not give its consent to grant of security interest by individual officer, where officer executed documents in his individual capacity and not in his representative capacity); *In re Ace Sports Mgmt., LLC.*, 271 B.R. 134 (Bankr. E.D. Ark. 2001) (consent not sufficient when contract prohibited transfer of interest from individual to corporation).

interest.[12] Here, Rudick had notice and knowledge that Cornerstone was granting a security interest in the Property to Bank.  His signature on the Cornerstone Loan documents is evidence of his consent to give Cornerstone such rights.  Bank was entitled to rely on the representation by Rudick that Cornerstone had authority to pledge the Property as security for the Cornerstone Loan.  Any other conclusion would result in the kind of "hidden-title subterfuge the [UCC] was intended to prevent."[13]  The Court finds that under the circumstances presented in this case, Rudick gave his consent to Cornerstone to pledge the Property as security for the Cornerstone Loan, and that consent was sufficient for Bank's security interest to attach to the Property.

The case of *Merchants Bank v. Atchison (In re Atchison)*,[14] was based on facts strikingly similar to our own.  There, the owner of equipment, an individual, executed a chattel mortgage as an officer of a corporation that purported to grant a security interest in the equipment to a bank. The language of the mortgage indicated that the corporation was the rightful owner of the equipment, giving it the power to grant a security interest. During his bankruptcy proceedings, the owner of the equipment attempted to disavow that he intended to grant the bank any security interest in his equipment.  Finding no ambiguity or indicia of fraud in the chattel mortgage, the United States Court of Appeals for the Eleventh Circuit refused to consider the owner's testimony

---

[12] *See In re Atchison*, 832 F.2d at 1239 (inferring consent where owner signed mortgage on behalf of corporation); *In re WL Homes, LLC*, 452 B.R. at 146 ("A court may infer from the circumstances that an owner has granted permission to a debtor to use its property as collateral or has otherwise consented to the debtor's use of the owner's property as collateral."); *In re Terrabon, Inc.*, 2013 WL 6157980 at *6 ("The legal owner of collateral may give consent for the use of the property as collateral himself or through an agent; and a court may infer such consent from the circumstances.").
[13] *Kinetics Tech.*, 705 F.2d at 399. *See also In re Whatley*, 874 F.2d at 1004 ("As the Tenth Circuit has observed, the UCC was designed, in part, to prevent hidden-title subterfuge in which the true owner of collateral, by permitting another party to exercise an outward appearance of ownership, could deceive third-party creditors to their detriment.").
[14] 832 F.2d 1236 (11th Cir. 1987).

of his intent under the parol evidence rule.[15] The court found that under the prevailing legal standard, "an owner's permission to use goods as collateral creates rights in the debtor sufficient to give rise to an enforceable security interest."[16] The court concluded that the "[corporation] had rights in the collateral. [Owner] himself signed the mortgage on behalf of the corporation; even if he did own the equipment, his signature for [corporation] was sufficient to infer his consent to its use as collateral."[17] The Court finds *In re Atchison* to be a correct statement of the law.

Trustee cites two cases in support of his position that Rudick's consent was not enough to allow Cornerstone to grant an enforceable security interest to Bank. The first is *In re Clinkingbeard*.[18] That case has *similar* facts, but contains a critical twist. Clinkingbeard, an individual, was the sole owner and managing member of an LLC. The LLC was the registered owner of a truck, but Clinkingbeard executed a security agreement to a bank in his personal capacity using the truck as collateral. Judge Nugent correctly found that an owner/member of an LLC had no rights in the specific property owned by the LLC that would qualify as "rights in collateral" under the Kansas version of § 9-203 of the UCC.[19] Clinkingbeard did not execute the documents in any capacity as representative of the LLC that might suggest the corporation's consent to allow Clinkingbeard to transfer an interest in its property. These facts are the exact inverse of the case at bar. The inference of consent that runs from owner to LLC, as described in cases such as *In re Atchison*, *In re WL Homes*, and *In re Terrabon*, does not necessarily run from LLC back to the owner. As such, the outcome in *In re Clinkingbeard* is as reasonable as it is unsurprising, but it does not assist Trustee in this matter.

---

[15] *Id.* at 1238-39.
[16] *Id.* at 1239.
[17] *Id.*
[18] No. 19-11605, 2020 WL 1517932, at *1 (Bankr. D. Kan. Mar. 30, 2020).
[19] Applying Kan. Stat. Ann. § 84-9-203.

The second case pressed by Trustee is *In re Ace Sports Mgmt., LLC*.[20] There, a sports agent conducted his business through a single-member LLC. Per NBA league rules, the agent was only allowed to contract with a basketball player in the agent's personal capacity.[21] The LLC later borrowed money from a bank by purportedly granting a security interest in the agent's commissions under the player contract. The security agreement with the bank listed the LLC as the debtor and was executed by the agent in his representative capacity as an officer of the LLC. The court in *In re Ace Sports* acknowledged the cases regarding consent of the lawful owner of collateral giving sufficient rights to a corporation to execute a security agreement, but ultimately distinguished the case on its facts. Because the league required commissions under player contracts to be paid exclusively to individuals, the agent could not have transferred those commissions to his LLC. This fact was enough for the court to reach a different outcome. *In re Ace Sports* has no application to the case at bar.

Apparently for the first time in this litigation, Trustee raised the issue of the perfection of Bank's liens in his closing argument at trial. Bank protested at the time, and the Court gave the parties an opportunity to address the matter in post-trial briefing. Bank points out that the issue of the perfection of its liens was never raised in the Complaint or any other motion or pleading filed in this case, and that the Pre-Trial Order focused almost exclusively on issues of lien attachment, i.e., whether Bank's liens were enforceable against Cornerstone.[22] The Court agrees.

---

[20] 271 B.R. 134 (Bankr. E.D. Ark. 2001).
[21] NBA League rules required a sports agent contracting with its players to be an individual and not a business entity. *See id*. at 138.
[22] *See Matter of Pubs, Inc. of Champaign*, 618 F.2d 432, 436 (7th Cir. 1980) ("[Section] 9-203(2) expressly equates the concept of attachment with that of enforceability against the debtor.") (citing previous version of UCC Article 9).

Among the issues of law to be litigated in this action, found at Paragraph 8 of section VII of the Pre-Trial Order, is "Are the liens of Mabrey Bank in and to the Property inferior, junior and void as to the Trustee by virtue of 11 U.S.C. Section 544?"[23] As phrased, this issue appears very broad and open to interpretation. Every other issue of fact or law raised in the Pre-Trial Order deals with either 1) the ownership and/or rights to the Property;[24] or 2) the status of the Trustee's liens under § 544.[25] The Pre-Trial Order contains no reference to perfection of Bank's liens. It came as a surprise to both Bank and the Court when Trustee raised the issue of perfection in his closing arguments. The Court will not allow Trustee to include a non-specific, catch-all type statement in the Pre-Trial Order to ambush his adversary with new-found issues at trial. The Court agrees with Bank that Trustee did not sufficiently preserve the issue of lien perfection in the Pre-Trial Order and that it would operate as an injustice to allow him to press the issue after the close of evidence at trial. The Court finds that Trustee did not raise the issue of Bank's lien perfection in a timely manner, and thus has waived it as a triable issue in this proceeding.

## Conclusion

The Trustee is correct that the Property belonged to Rudick at all relevant times, and that it became property of his bankruptcy estate. But the Property entered the estate subject to the valid and enforceable security interest of Bank, given by Cornerstone with the knowing and voluntary consent of Rudick. Bank has met its burden to show it has a valid and enforceable security interest in the Property. Trustee has waived the issue of perfection of Bank's interest and has raised no

---

[23] *Docket No. 15*, at 6 § VII ¶ 8.
[24] Specifically, the Pre-Trial Order raised factual and legal issues involving the ownership of the Property, whether value was given by Bank, and whether Cornerstone had sufficient rights in the Property to convey a security interest to Bank. *See Docket No. 15*, at 4 § IV ¶ 1-8, and at 6 § VII ¶ 1-3.
[25] *See Docket No. 15*, at 6 § VII ¶ 4-7.

other contested issues. The Court declines to find that the liens created by 11 U.S.C § 544 in favor of Trustee are superior to the interest of Mabrey Bank, or that the security interest and liens of Mabrey Bank are avoided.

A separate judgment will be entered consistent with this Opinion.

Dated this 28th day of April, 2022.

BY THE COURT:

TERRENCE L. MICHAEL
UNITED STATES BANKRUPTCY JUDGE